IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joseph P. Hudgins, #276817, | ) | C/A No. 5:10-3282-JFA-KDW |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Leroy Cartledge, Warden, | ) | |
| Respondent. | ) | |
| | ) | |

  Petitioner Joseph P. Hudgins, a state prisoner, filed this pro se petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, seeking to have his conviction and sentence vacated

and to receive a new trial. This matter is before the court pursuant to 28 U.S.C. § 636(b) and

Local Civil Rule 73.02(B)(2) D.S.C. for a Report and Recommendation on Respondent's return

and motion for summary judgment. ECF No. 23. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309

(4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the

possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 24.

Petitioner filed a response in opposition. ECF No. 26. Having carefully considered the parties'

submissions and the record in this case, the undersigned recommends that Respondent's motion

be granted.

I.  Background and Procedural History

  Petitioner is confined in the McCormick Correctional Institution of the South Carolina

Department of Corrections ("SCDC"), serving a sentence of life imprisonment for murder and

five years for grand larceny. This habeas corpus action concerns the entry of a guilty plea by

Petitioner on July 18, 2001, after the South Carolina Supreme Court granted state post-

conviction relief ("PCR") on his 1993 death sentence and remanded the matter for a new trial.

The central issue presented is a legal one: whether *Roper v. Simmons*, 543 U.S. 551 (2005), applies retroactively to invalidate Petitioner's 2001 guilty plea and the written agreement waiving the right to pursue challenges of his conviction because he was 17 years of age at the time of the murder.

    A.     Petitioner's 1993 Trial, Appeal, and Collateral Proceedings

Petitioner was indicted at the January 1993 term of the Anderson County Court of General Sessions for grand larceny of an Orkin Pest Control vehicle (93-GS-04-227) and the murder of Anderson County Deputy Chris Taylor (93-GS-04-228). App. 154-57.[1] Robert Lusk and Robert Gamble represented Petitioner. The State notified Petitioner that it would seek the death penalty, and the case was tried beginning on July 19, 1993. Petitioner was found guilty of all charges, and, on the jury's recommendation, the Honorable C. Victor Pyle sentenced Petitioner to death on July 27, 1993.

Petitioner filed an appeal with the South Carolina Supreme Court. On appeal, John H. Blume, Leslie Ross Hall, and David P. Voisin, of the South Carolina Death Penalty Resource Center, represented Petitioner. Salley W. Elliott, Assistant Deputy Attorney General, represented Respondent on appeal. As one of the grounds for appeal, Petitioner challenged the imposition of the death penalty on him as a violation of the prohibition against cruel and unusual punishment because he was only 17 years old at the time the crimes were committed. The South Carolina Supreme Court heard oral arguments on April 24, 1995, and, on July 24, 1995, the state's highest

---

[1] Citations to "App." refer to the Appendix for Writ of Certiorari as to Petitioner's claim for collateral relief in the state courts of South Carolina, which is available at ECF No. 22-4 in this habeas matter. Page number references are to the pages as numbered in the Appendix.

court affirmed the judgments of conviction and sentence. *State v. Hudgins*, 460 S.E.2d 388 (S.C. 1995).[2] On August 25, 1995, Petitioner filed a Petition for Rehearing, which was denied.

Petitioner subsequently filed a Petition for Writ of Certiorari in the United States Supreme Court on November 24, 1995. Mr. Blume represented Petitioner in the appeal to the United States Supreme Court. Respondent filed a Brief in Opposition on December 21, 1995. The United States Supreme Court denied the Petition on January 22, 1996. *Hudgins v. South Carolina*, 516 U.S. 1096 (1996).

On April 30, 1996, the South Carolina Supreme Court entered an Order granting a stay of execution to allow Petitioner to file a PCR application. Petitioner filed his initial application, which Respondent received on July 15, 1996. Respondent filed a return on August 15, 1996. On February 25, 1997, Petitioner served Respondent with an amended application, and Respondent made its amended return on March 7, 1997. Among the issues presented, Petitioner asserted that the application of the death penalty to him violated the prohibition against cruel and unusual punishment because he was only 17 years old when the crimes were committed. On March 10-12, 1997, the Honorable Gary E. Clary conducted an evidentiary hearing. Petitioner was present with counsel, Mr. Bruck, Mr. Voisin, and Diana L. Holt. Donald J. Zelenka and William Edgar Salter III of the South Carolina Attorney General's Office represented Respondent. At the conclusion of the hearing, the court allowed both parties to submit post-hearing memoranda. On July 18, 1997, Judge Clary issued an Order of Dismissal that denied Petitioner's PCR application

---

[2] In affirming Petitioner's conviction and sentence on direct appeal, the South Carolina Supreme Court ruled that issues related to the sentence of a 17-year-old were procedurally barred because they had not been raised at trial. *State v. Hudgins*, 460 S.E.2d at 391 (procedurally barring consideration of Petitioner's contentions that imposing death penalty on one who was younger than 18 years old at the time of the crime was cruel and unusual punishment under article I, section 15 of the South Carolina Constitution and that S.C. Code Section 16-3-20 was unconstitutional because it authorized imposition of the death penalty on a juvenile).

with prejudice. Subsequently, Petitioner filed a Motion to Alter or Amend Judgment, pursuant to Rules 15(b) and 59(e), SCRCP, which the PCR court denied in a September 12, 1997 order. Petitioner filed a notice of appeal on October 6, 1997.

On February 12, 1998, Petitioner filed a Petition for Writ of Certiorari in the South Carolina Supreme Court. Included in the issues raised was Petitioner's claim that trial counsel were ineffective for failing to object to the application of the death penalty based upon his age at the time of the crimes. Respondent made its Return on April 13, 1998. On April 21, 1998, Petitioner filed a motion to strike, to which Respondent made a return on May 1, 1998. On January 6, 1999, the South Carolina Supreme Court denied Petitioner's motion to strike and granted a motion to consolidate the certiorari petition with a petition for writ of habeas corpus. The South Carolina Supreme Court denied the petition for habeas corpus, granted the petition for writ of certiorari, and requested briefing.

Petitioner filed his brief with the South Carolina Supreme Court on February 5, 1999, and Respondent filed its brief on April 12, 1999. The American Psychological Association, South Carolina Psychiatric Association, and Protection and Advocacy for People with Disabilities, Inc., submitted a proposed brief of amicus curiae in support of the petition, which the court permitted to be filed on March 18, 1999. The South Carolina Supreme Court reversed the denial of PCR and remanded for a new trial, finding Petitioner's trial counsel had been ineffective because they did not object to the introduction of Petitioner's responses to a court-ordered psychological test given during Petitioner's pre-trial competency examination. *Hudgins v. Moore*, 524 S.E.2d 105, 108 (S.C. 1999).[3] The remittitur was issued on December 28, 1999.

---

[3] Because the court reversed the denial of PCR based on the personality-test issue, it did not address Petitioner's other arguments. 524 S.E.2d at 108. Other arguments presented included

4

B.  Proceedings After the 1999 Remand for a New Trial: the Agreement, Plea, and Life Sentence

After remand to circuit court, Petitioner and his attorneys, Mr. Bruck and Bruce Byrholdt; Anderson County Solicitor Druanne White; and the South Carolina Department of Probation, Parole, and Pardon Services ("SCDPPPS") reached a plea agreement.  In a document titled "Contractual Agreement Waiving All Rights to Parole" [hereinafter "Waiver/Plea Agreement"], Petitioner agreed to:  waive the right to a jury trial and all rights pertaining thereto; enter a guilty plea to murder; stipulate to two specific aggravating circumstances pursuant to S.C. Code Ann. § 16-3-20(C)(a)(1) (2003); and never apply for or accept parole, pardon, commutation of sentence, reprieve, or any other form of relief from life imprisonment. Petitioner entered into the Waiver/Plea Agreement "in consideration and exchange for the State's agreement not to seek the death penalty." App. 82-93. Petitioner also waived any right to appeal or otherwise challenge the guilty plea, sentence, or other aspect of the case in state or federal court, including but not limited to direct appeal, PCR, or habeas corpus proceedings in state or federal court. App. 85. By its terms, the Waiver/Plea Agreement constituted the basis for finding under S.C. Code Ann. § 24-21-640 that Petitioner would never have circumstances that warranted parole. App. 88-89. Petitioner, his counsel, Solicitor White, and SCDC counsel signed the Waiver/Plea Agreement on July 18, 2001. App. 91. Petitioner and his counsel also executed a document titled "Irrevocable Waiver of Parole" to SCDPPPS in which Petitioner acknowledged that he would become eligible for parole consideration in the future, but that he irrevocably waived his right to

---

Petitioner's argument that his trial counsel were ineffective because they did not object to the State's seeking the death penalty against Petitioner because of his age at the time of the offense.

be considered for parole. App. 90-91.[4] Petitioner, two witnesses, and a notary public signed the Irrevocable Waiver of Parole on July 18, 2001. App. 93.

On July 18, 2001, Petitioner and his counsel appeared before the Honorable Joseph Watson and entered a guilty plea to grand larceny and murder. App. 1-26. He was sentenced to confinement for five years for grand larceny to run concurrent with a life sentence for murder. App. 26. Petitioner did not appeal this conviction or sentence.

### C. Collateral Proceedings Regarding the 2001 Plea and Sentencing

#### 1. February 2006 PCR Application

Petitioner filed an application for PCR on February 29, 2006, in which he alleged that he is being held in custody unlawfully for the following reasons:

1. Ineffective assistance of trial counsel;
2. Ineffective assistance of appellate counsel;
3. Circuit court lacked subject matter jurisdiction;
4. Deficient and inadequate plea advice;
5. Judicial misconduct; and
6. Prosecutorial misconduct/ coerced waivers.

App. 28-59. The State filed a return on December 5, 2006 and moved for summary dismissal, asserting the application was untimely and was barred by Petitioner's agreement not to seek PCR. App. 61-74. A Conditional Order of Dismissal was issued on December 12, 2006, finding that the matter should be summarily dismissed because Petitioner failed to comply with the filing procedures of the Uniform PCR Act, S.C. Code Ann. § 17-27-45(A) (2003), and because Petitioner executed an agreement waiving all rights of judicial review, including the right to apply for PCR. On June 18, 2007, the court issued a Final Order. Petitioner then moved the circuit court to alter or amend the order of dismissal pursuant to Rule 59(e), SCRCP, arguing the United States Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551 (2005), was a new,

---

[4] The "Irrevocable Waiver of Parole" is exhibit A to the Waiver/Plea Agreement.

retroactive rule of law; and that he filed the application within one year of the pronouncement of the new law. Upon review of the motion, the court granted Petitioner's request for reconsideration, finding that Petitioner satisfied the threshold for consideration of whether the after-recognized constitutional right exception to the PCR Act's time-bar provision applied because Petitioner filed the application within one year of the *Roper* decision. The matter was restored to the docket for a hearing on the issue of the application of *Roper v. Simmons*.

Counsel Nancy Thomason was appointed to represent Petitioner, and she submitted an amended PCR application on his behalf on March 13, 2009. App. 75-81. In the amended application, Petitioner asserted:

> The State of South Carolina used the Death Penalty as coercion to get applicant to plead guilty to Murder. The State agreed that if the applicant would waive his right to parole, he would be allowed to plead guilty to Murder and receive a life sentence. The applicant signed a detailed contract (See Exhibit #A attached hereto), in which he agreed to give up the right to seek parole if the State agreed not to seek the Death Penalty. After being incarcerated for approximately ten years (four years after plea) the United States Supreme Court issued its decision in Roper v. Simmons, wherein it held that a minor who commits a crime before the age of 18 years old, may not be put to death. Applicant was 17 years old at the time this crime was committed, therefore, the death penalty was an illegal sentence. The State utilized an illegal inducement to convince the applicant to give up rights he would have otherwise had (to ask for parole). The fact that the State may not have known that the inducement was illegal is irrelevant. The fact is that the appellant gave up rights that would not have been taken from him if he had refused the terms of the contract.

App. 75-78.

On March 26, 2009, the Honorable J. Cordell Maddox, Jr. conducted a hearing on Petitioner's amended PCR application at which Petitioner and his counsel, Ms. Thomason, appeared. App. 93-139. Salley W. Elliott of the South Carolina Attorney General's Office represented Respondent.

At the hearing, Petitioner also argued that his sentence was illegal because it precluded him from parole consideration. Respondent moved for summary dismissal of the application, arguing that *Roper v. Simmons* did not apply retroactively to cases in which the offender was under the age of 18 at the time of the crime but who received a sentence of life rather than the death penalty. Respondent also argued that, because *Roper* did not apply retroactively to Petitioner's life sentence, the PCR action was not timely filed under S.C. Code Ann. §17-27-45 (A) (2003). Respondent further asserted that any challenge to the legality of the agreement precluding parole consideration was barred by the statute of limitations as provided by S.C. Code Ann. § 17-27-45 (A).

After hearing argument, Judge Maddox orally denied relief. App. 134-37. On May 22, 2009, the court entered a written order dismissing Petitioner's application. App. 140-53.

Petitioner appealed the denial of PCR to the South Carolina Supreme Court. In the appeal, he was represented by Robert Pachak of the South Carolina Office of Indigent Defense. On November 2, 2009, counsel Pachak made a "*Johnson* Petition for Writ of Certiorari" and Petition to be Relieved as Counsel pursuant to *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), asserting the matter was without merit and as the sole arguable issue: "Whether there was any evidence to support the PCR judge's findings that *Roper v. Simmons* did not apply to petitioner's case?". *See* ECF No. 22-3.

On December 16, 2010, the South Carolina Supreme Court entered its order denying the petition for writ of certiorari after review pursuant to *Johnson v. State*. *Joseph P. Hudgins v. State*, Order (S.C. December 16, 2010) (order denying certiorari and granting counsel's request to withdraw), ECF No. 22-6. On January 5, 2011, the Remittitur was issued. ECF No. 22-7.

On December 29, 2010, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

III.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his petition for a writ of habeas corpus:

> 'New Rule' of U.S. Supreme Court applies retroactively to void the contractual agreement supporting petitioner's 2001 guilty plea.
> Supporting Facts:  The S.C. Supreme Court affirmed the lower 'PCR' court's judgment that Roper v. Simmons [543 U.S. 551 (2005)] does not apply to Petitioner's situation; the PCR court's judgment is 'contrary to' Roper where it is a fact of record Petitioner was under the age of eighteen (18) when murder took place; in 2001 guilty plea, the State sought Death Penalty prior to entry. Therefore Roper applies retroactively to void the 2001 guilty plea Contractual Agreement.

ECF No. 1 at 5. On January 5, 2011, Petitioner amended his petition, asserting the following:

> Petitioner's position is that the PCR Court's act of applying *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), contrary to its meaning of availability for retroactive application, should not be accorded the 'presumption of correctness' where no evidence of probative value exists in the PCR record to support the PCR Court's ruling.  Also, Petitioner's reliance upon *Lanier v. State*, 635 So. 2d 813 (Miss. 1994), to show that the 2001 Contractual Agreement between Petitioner and State was unconscionable and against public policy of this State (viz: life without parole from death sentence wasn't law).

> Congruent with the fact of *Roper* being retroactively applied by the S.C. Supreme Court in *State v. Morgan*, 367 S.C. 615, 626 S.E.2d 888 (S.C 2006), the U.S. Supreme Court—in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)—stated that a rule 'should be applied' retroactively when "observance of those "procedures that are . . . 'implicit in the concept of ordered liberty'" arise. –at [489] U.S. 307, 109 S.Ct.  at 1073 (internal citations omitted).

> Without question, *Teague* should provide an adequate basis for *Roper* to be seen as invalidating Petitioner's 2001 Contractual Agreement where the basis of that agreement (being, as in all contracts, the 'substance' of valuable consideration) was nullified by *Roper*.

ECF No. 10 at 2-3.

B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

Because Petitioner filed his petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C.

§ 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615

(4th Cir. 1998). The AEDPA provides the following regarding the federal court's review:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.
> (e)(1) In a proceeding instituted by application for a writ of habeas corpus by a
> person in custody pursuant to a judgment of a State court, a determination of a
> factual issue made by a State court shall be presumed to be correct. The applicant
> shall have the burden of rebutting the presumption of correctness by clear and
> convincing evidence.
> . . .

28 U.S.C. § 2254(d), (e).

In this case, both parties focus on legal issues surrounding whether the United States

Supreme Court's decision in *Roper* retroactively applies to Petitioner, thus invalidating the

Waiver/Plea Agreement and requiring he be granted a new trial. In interpreting § 2254(d)(1) and

discussing the federal courts' role in reviewing legal determinations made by state courts, the

United States Supreme Court held as follows:

> [A] federal habeas court may grant a writ of habeas corpus if the relevant state-
> court decision was either (1) "*contrary to* . . . [clearly] established Federal law as
> determined by the Supreme Court of the United States," or (2) "*involved an
> unreasonable application of* . . . clearly established Federal law, as determined by
> the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (emphases in original). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams,* 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

D.     Analysis

As detailed above, Petitioner was found guilty and sentenced to death in July 1993 for murder and grand larceny. His sentence was upheld on direct appeal. He petitioned for PCR and, after his petition was denied, the South Carolina Supreme Court considered Petitioner's request for certiorari. In 1999, that court reversed the denial of PCR and remanded for a new trial. *See Hudgins v. Moore*, 524 S.E.2d 105. In July 2001, Petitioner, represented by counsel, entered the Waiver Plea Agreement with the Anderson County Solicitor and the SCDPPPS. App. 82-93. Described in more detail above, the Waiver/Plea Agreement indicated that Petitioner was aware the State planned to empanel a jury to consider whether the death penalty should be imposed for the murder charge against him. App. 83. "[I]n consideration and exchange for the State's

agreement not to seek the death penalty[,]" Petitioner "freely, voluntarily and intelligently" pleaded guilty to murder and entered into the Waiver/Plea Agreement. *Id.* He agreed not to seek parole and not to pursue direct or collateral attacks on his conviction or sentence. App. 85-93. Petitioner did not appeal or file a PCR application at that time. He filed the instant petition for habeas corpus after the South Carolina courts' denial of his 2006 PCR application. In that application, he claimed the 2005 United States Supreme Court decision in *Roper v. Simmons*, 543 U.S. 551, retroactively applied to him and required that the Waiver/Plea Agreement be vacated and that he be awarded a new trial.

Respondent filed the instant motion for summary judgment, arguing *Roper* is inapplicable to Petitioner and that the Waiver/Plea Agreement remains valid.[5]

1. The *Roper* Rule Is Inapplicable to Petitioner

In 2005, United States Supreme Court found that the Eighth Amendment prohibited imposition of the death penalty on a person who was under the age of 18 at the time of the crime. *Roper*, 543 U.S. 551. Petitioner, who was 17 years old at the time of the murder, sought PCR, arguing that *Roper* applied retroactively to invalidate the Waiver/Plea Agreement. Petitioner argued he should be permitted to withdraw his guilty plea and receive a new trial, claiming the death penalty legally could not have been applied to him, making the inducement the State used to have him enter into the Waiver/Plea Agreement an illegal inducement. App. 77. As explained by the PCR court, Petitioner claims "in effect, that his guilty plea and sentence should be re-evaluated in light of *Roper*[,]" and that his "fear that he might receive the death penalty and his desire to reduce the potential death sentence to life imprisonment coerced his plea in 2001 and

---

[5] Respondent does not challenge whether Petitioner exhausted state-court remedies, nor does he raise other issues in his Return or motion for summary judgment.

that the plea is now predicated upon a faulty basis because he cannot now be executed." App. 148.

After briefing and a March 26, 2009 hearing, the PCR court issued a detailed decision finding *Roper* did not apply retroactively to Petitioner and finding the Waiver/Plea Agreement remained valid. The PCR court dismissed and denied Petitioner's PCR application. App. 140-53.

In this habeas matter, Petitioner claims that the South Carolina PCR court erroneously found *Roper* inapplicable to him and wrongly determined that the Waiver/Plea Agreement he entered in 2001 remained valid. In his motion for summary judgment, Respondent argues the PCR court's findings that (1) *Roper* was inapplicable and (2) the Waiver/Plea Agreement was valid were "not an unreasonable application[s] of precedent of the United States Supreme Court." ECF No. 22 at 16; *see Williams*, 529 U.S. at 405. Accordingly, Respondent submits that Petitioner is not entitled to habeas corpus relief and that his petition should be dismissed. Petitioner argues the PCR court erred and claims *Roper* applies retroactively to him and voids the Waiver/Plea Agreement, thereby requiring he be granted a new trial.[6]

The court reviews the May 2009 PCR dismissal to determine whether the PCR court's legal determination was an unreasonable application of the Court's *Roper* decision and other applicable precedent. 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 405. Having reviewed the record, briefs, and applicable law, the undersigned agrees with the state PCR court's conclusion that *Roper* is not applicable to Petitioner's case and that his Waiver/Plea Agreement remains valid.

---

[6] Although Petitioner couches his arguments as "issues of material fact," they all relate to the legal issue of whether the PCR court properly interpreted *Roper* in relation to him and his Waiver/Plea Agreement. *See, e.g.,* ECF No. 26-1 at 3-4 ("A genuine issue of fact exists in Respondents' reliance on state PCR Judge's erroneous application of *Roper* [which is] not applicable to Petitioner's situation."). Accordingly, the court focuses on the PCR court's legal determinations.

As the PCR court found,

> *Roper* by its very terms recognized a new constitutional right applicable only to individuals who were under the age of eighteen (18) at the time of the crime and who were **sentenced to death** prior to the decision. The holding in *Roper* was specifically limited in application to death sentences, not to all sentences of offenders under the age of eighteen where the death penalty was or could have been sought but was not imposed.

App. 148 (emphasis in original). Because Petitioner received a life sentence, rather than a death sentence, *Roper* is inapplicable. In support of its holding, the PCR court cited several cases from other states that found *Roper* inapplicable in similar situations. App. 148-49. *See, e.g., Pineda v. Leblanc*, C/A No. 07-3598, *3 (E.D. La. Jan. 31, 2008) (finding *Roper* inapplicable to federal habeas petitioner who had pleaded guilty and received a life sentence; collecting other federal court decisions finding the same); *McStoots v. Kentucky*, 245 S.W.3d 790, 791 (finding "the holding in *Roper* was specifically limited to death sentences, not to all sentencings of juveniles in capital cases.").

Additionally, as noted by the PCR court, the Supreme Court of South Carolina refused to apply *Roper* retroactively when considering the same argument. App. 152; *State v. Dingle*, 659 S.E.2d 101, 106 (S.C. 2008). In considering Mr. Dingle's federal habeas claim, the Honorable Patrick M. Duffy of this court also found *Roper* did not apply retroactively to invalidate a plea agreement that included a life sentence for the prisoner. *Dingle v. Stevenson*, 772 F. Supp. 2d 734, 740 (D.S.C. 2009). Judge Duffy also cited several cases that held similarly. *Id.*; *see Schane v. Cain*, No. 07-1068, 2007 WL 4967081, at *3 (W.D. La. Oct. 24, 2007) ("Petitioner, although a minor at the time of the commission of the offense in question, was not sentenced to death and

therefore the constitutional right recognized in *Roper* is clearly inapplicable.") (citing *In re Hill*, 437 F.3d 1080, 1082 n.1 (11th Cir. 2006) and collecting cases).

The *Roper* Court noted that, prior to its decision, states had appropriately relied on its prior precedent in *Stanford v. Kentucky*, 492 U.S. 361 (1989), in seeking the death penalty for those under 18 years old when crimes were committed. 543 U.S. at 575. The Court found, however, that the rule in *Stanford* "should no longer be in control in those few pending cases [in which states had imposed death penalty on juveniles] or in those yet to arise." *Id.* That language indicates the Court's decision did not implicate cases other than those in which defendants awaited their sentence of death and cases yet to be tried and sentenced, not those that might have resulted in a sentence of death, but did not.

Based on the Supreme Court's holding in *Roper,* the well-reasoned analysis of the PCR court in dismissing Petitioner's 2006 PCR application, and as articulated in cases cited by the PCR court and by Judge Duffy in *Dingle*, the undersigned finds that, by its terms, *Roper* does not apply retroactively to Petitioner's situation.

Petitioner's arguments in response (ECF No. 26-1) do not dictate a different result. He argues that it "is reasonable to assert that the U.S. Supreme Court wouldn't conclude" the result the PCR court did—i.e., finding *Roper* did apply to Petitioner's situation. ECF No. 26-1 at 4-5. The undersigned agrees that the PCR court's finding is the proper one. In addition, the court will not grant the writ of habeas corpus merely because it would be "reasonable" that the United States Supreme Court could rule differently than the state court. *Cf. Williams*, 532 U.S. at 402-03 (noting habeas writ granted when state court's adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'") (quoting 28 U.S.C. § 2254(d)(1)). The

PCR court's conclusion that *Roper* did not apply is supported by United States Supreme Court precedent and comes nowhere near reaching the standard of being "contrary to" or an "unreasonable application" of existing law.

Much of Petitioner's argument relies on the premise that the rule of *Roper* retroactively applied to him. Petitioner argues particularly the Supreme Court case of *Teague v. Lane*, 489 U.S. 288 (1989), supports his theory that *Roper* announced a rule that should be retroactively applied to him. ECF No. 26-1 at 12-13 (citing *Teague*, 489 U.S. at 307, for proposition that a new rule would be made retroactive if the rule's observance was required because the rule was "implicit in the concept of ordered liberty.").

As discussed above, the PCR court properly found that the *Roper* rule applied only to individuals who were sentenced to death for crimes committed before age 18. Accordingly, the court did not need to undertake the three-part analysis *Teague* sets forth for new rules of criminal procedure. As an initial note, the change effected in *Roper* is more substantive than procedural. Further, even if considered, *Teague's* analysis of when a new rule would be retroactive in habeas matters indicated that "new constitutional rules of criminal procedure" would generally not be applicable to cases that had become final before the new rules were announced. *See* 489 U.S. at 310. The Court found such rules would be retroactively applied only when they fell into one of two exceptions. *Id.* at 310-11.The language on which Petitioner relies—that a rule "implicit in the concept of ordered liberty" will be applied retroactively—is one of the exceptions that could permit a rule to be applied retroactively in limited situations. *See id.* However, a situation falls into that exception only when the new procedure is one "without which the likelihood of an accurate conviction is seriously diminished," or, what the Court described as "watershed rules of criminal procedure." 489 US at 311-12. Nothing in the record indicates that removing the death

penalty as a sentence Petitioner could have received would "seriously diminish" whether he would be convicted. A change in the potential penalty would not change the facts surrounding the crimes with which Petitioner was charged.

The undersigned also considered Petitioner's argument based on *State v. Morgan*, 626 S.E.2d 888 (S.C. 2006). *See* ECF No. 26-1 at 11. He is correct that, in that case, the court applied *Roper* retroactively. However, in that case, the defendant had received a death sentence for a crime he committed before he was eighteen years old. 626 S.E.2d at 617-18 & n.2. Because he remained under a sentence of death when the *Roper* decision issued in 2005, the South Carolina courts vacated his sentence of death and remanded his case to the trial court for resentencing. As discussed above, Petitioner's facts are different because he is serving a life sentence, a situation not addressed in *Roper*.

Accordingly, the undersigned recommends that Respondent's motion for summary judgment be granted and Petitioner's petition dismissed. *Roper* by its terms does not apply to Petitioner, who did not receive a death sentence when he pleaded guilty.

### 2. *Roper* Does Not Impact the Waiver/Plea Agreement

The PCR court also found that *Roper*'s change in the law did not permit Petitioner to invalidate Petitioner's guilty plea as having been involuntarily entered. *Williams*, 529 U.S. at 404-05; *see* App. 149 (citing *Brady v. United States*, 397 U.S. 742 (1970)). The undersigned finds the PCR court's determination on this point is a reasonable application of United States Supreme Court precedent, making habeas corpus relief inappropriate.

In *Brady*, the petitioner sought habeas corpus relief from his plea agreement. When Brady entered his guilty plea for violating the federal kidnapping statute, he could have faced the death penalty. After the Supreme Court found the death penalty was not available for violations

of that statute, Brady sought to withdraw his plea, stating he had pleaded guilty, in part, to avoid the death penalty. 397 U.S. at 742-45. As noted by the PCR court here, the *Brady* Court held that "a voluntary plea of guilty intelligently made in light of the **then applicable law** does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 756 (emphasis added). In addition, the Supreme Court found that "a plea of guilty is not invalid merely because entered to avoid the possibility of the death penalty." *Id.* at 755. The PCR court found that Petitioner's guilty plea had been "knowingly, voluntarily and intelligently entered" so that he could "receive what was then and is still today a constitutionally valid life sentence for his crimes and to avoid what was then a valid, more severe penalty." App. 151-52.

Here, the PCR court noted that Petitioner, through counsel, negotiated his guilty plea and entered into the agreement to avoid the possibility of the death penalty. App. 151; *see* App. 7-11 (plea colloquy); 92-93 (Waiver/Plea Agreement).The court also noted that Petitioner, through counsel, approached the State with the Waiver/Plea Agreement and that Petitioner does not claim in this habeas petition that he was ineffectively assisted by counsel who represented him at that time. App. 151; *see* App. 14-17. The guilty plea colloquy includes extensive questioning between the guilty plea court and Petitioner respecting the voluntary and intelligent nature of Petitioner's decision to enter the guilty plea and contractual agreement. App. 151; *see* App. 1-16 (colloquy). Further, citing the *Brady* Court, the PCR court noted Petitioner had not alleged that the State produced the plea by "actual or threatened physical harm or by mental coercion overbearing (his) will," or that he, with assistance of counsel, was unable to "rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady,* 397 U.S. at 751 (as cited by the PCR court, App. 151).

The court agrees with the PCR court's conclusions. Based on *Brady*, Petitioner's guilty plea is not rendered invalid merely because Petitioner pleaded guilty to avoid the possibility of a death penalty, a possibility that no longer exists in light of *Roper*.

Respondent argues that, to the extent Petitioner is claiming that the Waiver/Plea Agreement is invalid, the PCR court reasonably found that *Roper* did not apply to Petitioner, making him unable to apply *Roper*'s rule to now challenge and invalidate his Waiver/Plea Agreement. App. 152. The undersigned agrees. The court notes Petitioner's citation to *Lanier v. State*, 635 So. 2d 813 (Miss. 1994), (ECF No. 26-1 at 11), but finds it unpersuasive. Petitioner cites *Lanier* for the premise that a sentence of life without parole is void because it is against public policy. *Id.* In addition to being a case from Mississippi that has no binding authority on South Carolina's courts or law, that case was overturned. *See Twillie v. State*, 892 So. 2d 187, 190-91 (Miss. 2004).

The undersigned finds the PCR court thoroughly discussed relevant issues and appropriately applied *Roper, Brady,* and other precedent. Respondent's motion for summary judgment should be granted.[7]

III.    Conclusion

For the foregoing reasons, it is recommended that Petitioner's habeas petition be dismissed and Respondent's Motion for Summary Judgment be granted.

IT IS SO RECOMMENDED.

---

[7] The PCR court alternately held that, because *Roper* was inapplicable to Plaintiff's sentence, his request to withdraw his plea was barred by the state PCR statute of limitations. App. 152. S.C. Code Ann. § 17-27-45. Similarly, the undersigned notes that Petitioner's Waiver/Plea Agreement is valid and by its terms bars this § 2254 Petition. App. 85 (Petitioner's agreement waiving "all rights of judicial review, including, but not limited to, direct appeal, post-conviction proceedings, or habeas corpus proceedings in State and Federal Court.").

IT IS SO RECOMMENDED.

February 8, 2012                                  Kaymani D. West
Florence, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**